UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL PENN BANK, | : |
| Plaintiff, | : |
| v. | : Civil Action No. |
| FINANCIAL TELESIS, INC., | : |
| Defendant. | : |

## VERIFIED COMPLAINT

Plaintiff National Penn Bank ("NPB") hereby brings this action against Defendant Financial Telesis, Inc. ("FTI"). In support of its claims, NPB avers as follows:

1. NPB brings this action for damages and injunctive relief against FTI for unlawful termination of contract and violation of the parties' Nondeposit Investment Product and Brokerage Services Marketing Agreement ("Agreement").

2. NPB, through its affiliate National Penn Capital Advisors, Inc. ("NPCA"), provides investment advisory services to its clients.

3. FTI acted as a broker-dealer for securities transactions requested by NPB's clients.

4. On July 31, 2014, NPCA received abrupt resignations notices from E. Vaughn Landes, Larry E. Nolt, David W. Gotwals, Ronald J. Joyce, Jr. and Daniel W. Stephens (collectively, the "Brokers") indicating their resignation and/or "retirement" from NPCA. These resignations were deliberately contemporaneous with the purported termination of the Agreement by FTI.

1

5. The Brokers, who are acting violation of their contractual and common law obligations to NPB and/or NPCA, are colluding with FTI.

6. In addition to monetary relief, NPB seeks injunctive relief to prevent further damage from improper use of customer information. FTI agreed that such monetary relief could be granted in event of its breach of the agreement. NPB seeks such relief because it cannot operate its business without access to the customer transaction information to which FTI is currently blocking access in clear violation of the Agreement.

## Parties and Basis for Jurisdiction and Venue

7. NPB is a national bank with its principal place of business in Allentown, Pennsylvania.[1] NPB and/or its affiliate NPCA engages in the business of investment advisory services.

8. NPB is informed and believes, and on that basis alleges, that FTI is a Delaware corporation with a principal place of business at 4340 Redwood Highway, Suite B-60, San Rafael, California 94903.

9. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 (diversity). Plaintiff and Defendant are citizens of different states and there is in excess of $75,000 in controversy. The subject customer accounts generate approximately $2,000,000 in various revenues per year.

10. Venue is proper in this District because NPB and NPCA are located in this District, the Brokers are located in this District and so are the majority of the customers affected by FTI's misconduct.

---

[1] NPCA is a corporation duly organized and existing under the laws of Pennsylvania, with its principal place of business in Doylestown, Pennsylvania.

## Factual Background

11. On July 31, 2014, Landes delivered to Lewis Cyr, President and CEO of affiliate National Penn Wealth Management, resignation letters for Landes, Joyce, Gotwals, and Stephens, as well as a notice of retirement from Nolt. A true and correct copy of this e-mail communication and attachments is attached hereto as Exhibit "A." Each resignation was effective immediately.

12. Each Broker stated his intention to remain registered with FTI. Each listed James Williams, President of FTI, as the contact for any questions NPB may have. Ex. A.

13. On or around that time, FTI terminated access to critical customer account information used in NPB's business. As shown below, the timing of FTI's actions was not a coincidence.

14. In terminating its agreement with NPB, FTI failed to follow the termination procedures specified in the Agreement, a copy of which is attached as Exhibit B.

15. First, FTI failed to provide notice of its purported termination to the Compliance officer of NPB, as required by paragraph 11 of the Agreement. Ex. B, ¶ 11. Instead, FTI gave notice to Landes' personal email account on June 30, 2014. Accordingly, the termination was invalid.

16. Second, the Agreement states that "Upon termination of this Agreement, FTI shall not engage in the solicitation of any securities business from any customer account or from any person whose name becomes known to FTI FA(s) through Bank as a potential customer for a period of sixty (60) days from the date of termination of this Agreement and FTI shall cooperate in the transfer of any or all customer accounts to another broker-dealer during this prescribed period to a successor broker-dealer firm." Ex. B, ¶ 10.

17. This provision is unambiguous and clearly was agreed to by the parties to allow business introduced to FTI by NPB and/or NPCA to be transitioned to another broker-dealer in the event of termination of the Agreement.

18. To date, FTI has completely failed to fulfill *any* of its obligations respect to this provision.

19. On August 1, 2014, a representative of NPB contacted FTI's President, Jim Williams, Mr. Williams and informed him that NPB expected FTI to comply with all of its obligations under the Agreement. Williams suggested a willingness to cooperate, but FTI failed to take any action.

20. On the same day, NPB's outside counsel also sent FTI's President, Jim Williams, a letter notifying Williams of FTI's breach of paragraph 10 of the Agreement. A copy of the letter is attached as Exhibit C.

21. Notwithstanding these demands, FTI refuses to agree to comply with the terms of the Agreement.

22. All of the evidence uncovered to date suggests that FTI has or will soon be conspiring with the Brokers to solicit customers subject to the Agreement. On August 1, 2013, NPB located in Landes' deleted emails a June 29, 2014 email by which Landes e-mailed customer information to his personal e-mail account.

23. The June 29, 2014 e-mail from Landes' work email account to his personal email account also attached a spreadsheet containing customer names and account balance information for 838 NPB customer accounts.

24. This same e-mail contained a document purporting to be a summary of a new proposed business structure, including notations that can reasonably be interpreted as the initials

of Landes, Nolt, Gotwals, Joyce, and Stephens and projections of their compensation under this proposed business arrangement.

25. Furthermore, on July 1, 2014, Landes told Mr. Cyr in writing that he was in the process of "interviewing and researching alternative broker dealers" in light of FTI's purported termination of the Agreement. At the same time, Landes apparently was in negotiations with FTI to establish a new entity with which FTI would affiliate and move NPB's customers away from NPB. The only reasonable conclusion is that the Brokers and FTI are working together to deprive National Penn of important customer relationships.

26. Furthermore, NPB has discovered that FTI and Williams have been contacting NPB customers and informing them that "Our offices are moved and our telephone number has changed" and that "**E. Vaughn Landes** and his team will continue to be the representative assigned to your accounts." A copy of one such letter (with customer name redacted), sent the day following the resignations, is attached as Exhibit D.

27. The letter sent -- signed by FTI President Williams -- is certain proof that FTI is blatantly violating the terms of paragraph 10 of the Agreement and is also actively aiding the breach of non-competition, non-disclosure and non-solicitation obligations of Landes and/or the other Brokers.

28. In the Agreement, FTI agrees that in the event of a breach of the Agreement, NPB is entitled to an immediate injunction, counsel fees and litigation expenses. Ex. B. ¶ 15. As a result, immediate injunctive relief is necessary.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

29. NPB realleges and incorporates herein by reference the above allegations as if

stated fully herein.

30. FTI breached its Agreement with NPB by terminating the contract without proper notice, denying NPB access to its critical customer transaction information in FTI's possession in violation of paragraph 10 of the Agreement and otherwise failing to comply with paragraph 10 of the Agreement.

31. Upon information and belief, FTI further breached its Agreement with NPB by soliciting business from NPB clients in violation of the express provisions of the Agreement.

32. As a direct and proximate result of FTI's breach of its, NPB has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated. Accordingly, the Company is entitled to a temporary restraining order and a preliminary injunction and such relief as is more fully described below.

## SECOND CLAIM FOR RELIEF
### (Unfair Competition)

33. NPB realleges and incorporates herein by reference the above allegations as if stated fully herein.

34. FTI's conduct as set forth above and incorporated herein is unlawful, unfair, fraudulent and deceptive, and it constitutes unfair competition.

35. FTI's conduct has harmed NPB and deprived it of certain business.

36. NPB has suffered and continues to suffer irreparable harm and injury as a result of FTI's unfair competition, and NPB lacks an adequate remedy at law, in that damages are extremely difficult to ascertain and, unless injunctive relief is granted as prayed for herein, FTI will continue to injure NPB's business, goodwill and reputation.

## THIRD CLAIM FOR RELIEF
### (Intentional Interference with Actual and Prospective Economic Advantages)

37. NPB realleges and incorporates herein by reference the above allegations as if stated fully herein.

38. NPB has developed and maintains advantageous actual and prospective business relationships with its clients that promise a continuing probability of future economic benefit to NPB. FTI knew or reasonably should have known about these relationships.

39. NPB is informed and believes, and on that basis alleges, that FTI intentionally, maliciously and improperly interfered with and continue to interfere with NPB's relationships with its clients by, among other things, directly and/or indirectly attempting to induce NPB clients to sever their relationships with the Company.

40. There was no privilege and justification for FTI's conduct.

41. FTI's conduct as alleged herein causes and will continue to cause irreparable injury to NPB and entitles it to temporary and preliminary injunctive relief.

42. As a direct and proximate result of FTI's conduct, NPB has sustained and will continue to sustain damages, the exact amount of which is extremely difficult to calculate and is now unknown.

## FOURTH CLAIM FOR RELIEF
### (Negligent Interference with Actual and Prospective Economic Advantage)

43. NPB realleges and incorporates herein by reference the above allegations as if stated fully herein.

44. NPB has developed and maintains advantageous actual and prospective business relationships with its clients that promise a continuing probability of future economic benefit to

NPB. FTI knew or reasonably should have known about these relationships.

45. FTI negligently interfered with and continue to interfere with NPB's relationships with its clients by, among other things, directly and/or indirectly attempting to induce NPB clients to sever their relationships with NPB.

46. FTI's conduct as alleged herein causes and will continue to cause irreparable injury to NPB and entitles it to temporary and preliminary injunctive relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff NPB respectfully requests that this Court:

A. Grant NPB a temporary restraining order and preliminary injunction enjoining and restraining FTI and all those acting in concert with them from:

(a) soliciting any business from, or initiating any contact with, any client whom Defendants served or whose name became known to them during the course of their association with NPB, or causing, assisting or inducing any client or contractholder of NPB and/or any affiliate of NPB, or any person whose name became known to Defendants during the course of their association with NPB, to discontinue, terminate or withdraw values from any policy, annuity, contract, service or product of any kind of NPB and/or any affiliate of NPB, or any policy sold by NPB and/or any affiliate of NPB, or to purchase services or products that compete, directly or indirectly, with those sold or serviced by NPB and/or any affiliate of NPB;

(b) using, disclosing or transmitting for any purpose any confidential or proprietary information belonging to NPB and/or any affiliate of NPB or which NPB, and/or any affiliate of NPB is obligated to protect, or concerning the

customers, employees and associated persons of NPB and/or any affiliate of NPB, including but not limited to the names, addresses, and telephone numbers of customers, employees and associated persons of NPB and/or any affiliate of NPB, and the financial information of customers of NPB and/or any affiliate of NPB.

        B.     Order FTI to reinstate its Agreement with NPB under its current terms for a period of thirty (30) days and immediately grant NPB access to its customer account information.

        C.     Order FTI to immediately comply with all aspects of the Agreement, including but not limited to paragraph 10.

        E.     Monetary relief in excess of $75,000 in a precise amount to be established at trial; and

        F.     Grant all other relief that this Court deems just and proper, including but not limited to the counsel fees and costs required by paragraph 15 of the Agreement.

/s/ Andrew J. Soven

Andrew J. Soven, Esq. (ID No. 76766)
Debra A. Djupman, Esq. (ID No. 206437)
**REED SMITH LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, Pennsylvania 19103
(215) 851-8100
(215) 851-1420 (facsimile)
asoven@reedsmith.com
ddjupman@reedsmith.com
*Attorneys for Plaintiff*
*National Penn Bank*

Dated: August 4, 2014

## VERIFICATION

I hereby verify that the foregoing facts are true and correct, to the best of my knowledge, information and belief. I understand that this verification is subject to applicable state and federal law governing unsworn verifications.

*[signature]*